UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

WORLD HEALTHCARE SYSTEMS, INC.   )
   )
      Plaintiff,   )
   )   Civil Case No. 1:10-CV-60
      v.   )
   )   Chief Judge Curtis L. Collier
SSI SURGICAL SERVICES, INC.   )
   )
      Defendant.   )

## AMENDED MEMORANDUM

Before the Court are several motions filed by Plaintiff/Counter-Defendant World Healthcare Systems, Inc. and Defendant/Third Party Plaintiff/ Counter Claimant Surgical Services, Inc.  For the reasons stated below, the Court will **GRANT IN PART** and **DENY IN PART** Surgical Services, Inc.'s motion to strike the affidavit of Todd Riddell and motion for sanctions (Court File No. 125).  The Court will **GRANT IN PART** and **DENY IN PART** Surgical Services, Inc.'s motion for summary judgment (Court File No. 102).  The Court will **DENY IN PART as MOOT** and **RESERVE RULING IN PART** World Healthcare System, Inc.'s motion for judgment on the pleadings (Court File No. 72) and **GRANT IN PART** its motions to disburse funds (Court File Nos. 109, 128).

## I.     BACKGROUND

### A.     Factual Background

Plaintiff World Healthcare Systems, Inc. ("WHS") is a minority-owned business incorporated in the state of Tennessee (Court File No. 114).  Defendant Surgical Services, Inc.

("SSI") is a corporation existing under the laws of the state of Delaware with its principal office located in Orlando, Florida (*id.*).

In June 2002, WHS and SSI entered a long-term contract, or a "Letter Agreement," under which SSI agreed to perform on-site endoscopic procedures at certain hospitals recruited by WHS (Court File Nos. 103, 116). In exchange for WHS making the referrals, SSI agreed to pay WHS a five percent (5%) commission on cash collections on a quarterly basis. Under the terms of the Letter Agreement, those hospitals affiliated with Catholic Health Initiatives ("CHI") were specifically identified, and the contract provided the cash commissions would continue to be paid to WHS for the "life" of the contract between SSI and CHI (or "CHI Agreement") (Court File No. 105-1 at 1). In addition, the Letter Agreement maintained SSI would "extend the same commission program for those accounts [between SSI and the hospitals] listed on Exhibit A [of the Letter Agreement,] provided such contracts [were] executed by September 30, 2002" (*id.*).

According to SSI, "all but four . . . hospitals participated in an endoscopic system agreement between SSI and CHI that became effective February 1, 2002 and was terminated on December 31, 2004" (Court File No. 103 at 4). The other hospitals not subject to the CHI Agreement were JFK Medical Center, whose contract with SSI terminated on March 31, 2005, and Chippenham, Johnston-Willis, and Northwest Medical Center, whose contracts with SSI remain in effect (*id.*).

On August 26, 2003, Pacesetter SBIC Fund, Inc., f/k/a Power Equities, Inc. ("PEI") sent a letter (or a "Direct Pay letter") to SSI claiming it had a perfected security interest in all accounts receivable of WHS, including amounts owed to WHS by SSI (*see* Court File No. 20-1). According to the letter, PEI was authorized to collect payments owed to WHS directly from SSI (*id.*). As a result of the Direct Pay letter, SSI "made clear to WHS its intentions not to pay WHS the

commissions earned pursuant to the Agreement unless and until WHS had resolved its dispute with PEI over the proper payee of those commissions" (Court File No. 105 at 3). In response, WHS corresponded with SSI on December 19, 2003 through its counsel acknowledging SSI "[had] not paid on its contractual obligation with WHS, and [had] communicated its intent not to pay on its contractual obligation" (Court File No. 105-2 at 1). Indeed, the record reflects from some point in 2003 or 2004 until the time this lawsuit was filed, SSI did not pay WHS the commissions owed under the Letter Agreement.

In January 2005, SSI entered into a group purchasing agreement with Consorta, Inc. ("Consorta Agreement") (Court File Nos. 103, 116). According to SSI, the Consorta Agreement was a separate and distinct contract from the CHI Agreement (Court File No. 103). WHS, in contrast, argues the Consorta Agreement was executed in order for SSI to "continue to provide services at [CHI affiliated hospitals,]" as CHI, according to WHS, is the owner of Consorta, Inc. (Court File No. 116 at 7-8).

B.    **Procedural History**

Because SSI failed to pay WHS a disputed amount of commissions earned, WHS filed an action on or about February 17, 2010 in the Chancery Court for Hamilton County, Tennessee against SSI on the grounds of breach of contract; common law procurement of breach of contract; intentional interference with a business relationship; malice, fraud, and deceit; conversion; violation of the Tennessee Consumer Protection Act; unjust enrichment; promissory estoppel; common law bad faith; and intentional misrepresentation (Court File No. 1). According to WHS, it suffered in excess of $1,700,000.00 in damages (*id.*). On March 19, 2010, SSI filed a notice of removal to this Court on the basis of diversity jurisdiction (*id.*).

On May 28, 2010, WHS filed an amended complaint, also alleging (1) SSI "acted under the color of law to deny WHS equal protection of the laws, and to discriminate on the basis of race, in violation of 42 U.S.C. §§ 1981 and 1983 " ("Count Twelve"); and (2) "as a program or recipient of federal funds, [SSI] discriminated against WHS on the basis of [] race, color, and/or ethnicity in violation of 42 U.S.C. § 2000d" ("Count Thirteen") (*id.*).

SSI has never disputed that it failed to pay some commission funds to WHS. However, SSI contends it did not pay WHS all of its earned commissions because it was not clear to SSI whether WHS or PEI was entitled to receive those commission funds. In addition, SSI argues it does not owe WHS the amount of damages asserted in WHS's complaint. Rather, SSI urges the Court to find it is only liable to either WHS or PEI for $428,907.25 in commissions earned pursuant to the Letter Agreement (Court File No. 102). On February 15, 2011, Magistrate Judge Susan K. Lee granted SSI's motion to deposit $383,370.00 with the Court (Court File No. 99).

On July 9, 2010, SSI filed a motion to dismiss as to Counts Twelve and Thirteen of the amended complaint (Court File No. 21). The Court granted SSI's motion to dismiss on the grounds WHS failed to plead enough facts regarding those counts to state a claim upon which relief might be granted (Court File No. 85). However, because WHS moved this Court for an opportunity to replead those Counts and because WHS alleged additional facts in its response to SSI's motion to dismiss (Court File No. 26), the Court ordered WHS to file a proper motion to amend its complaint (Court File No. 85), and the Court granted WHS's motion to amend with respect to Count Thirteen (Court File No. 111).

On April 29, 2010, SSI filed a motion to add PEI as an involuntary plaintiff in this case (Court File No. 12), and the motion was denied (Court File No. 19). However, on July 9, 2010, SSI

filed a third party complaint against PEI, making PEI a party to this case (Court File No. 20).

Now pending before the Court are a motion for judgment on the pleadings filed by WHS (Court File No. 72); a motion for summary judgment filed by SSI (Court File No. 102); a motion for disbursement of funds by WHS (Court File Nos. 109, 128); and a motion to strike an affidavit/motion for sanctions (Court File No. 125).


## II.      MOTION TO STRIKE/MOTION FOR SANCTIONS

SSI moves this Court to strike the affidavit of Todd Riddell ("Riddell") from the record and to impose sanctions on WHS's counsel, Curtis Bowe, for violation of the Tennessee Rules of Professional Conduct (Court File No. 125).  For the reasons stated, the Court will **GRANT IN PART** and **DENY IN PART** SSI's motion.

On March 22, 2011, in response to SSI's motion for summary judgment, WHS filed the affidavit of Riddell, former President and Chief Executive Officer of SSI (Court File No. 119). According to SSI, Riddell improperly disclosed "confidential, proprietary, and privileged information of SSI regarding this matter, and WHS's counsel, Curtis Bowe, violated the Tennessee Rules of Professional Conduct by soliciting such information from Riddell and using it for the purpose of opposing SSI's motion for summary judgment (Court File No. 125 at 1).

In SSI's motion, it alleges the most egregious parts of Riddell's affidavit are found in paragraphs 26, 27, and 31 which discuss SSI's financial reserves, conversations between Riddell and SSI's parent company's counsel, and information regarding contracts entered between SSI and certain hospitals and revenues earned pursuant to those contracts. (Court File No. 126).  At the time Riddell signed this affidavit, SSI contends, and WHS does not deny, Riddell was still bound by an

Employment Agreement with SSI which prohibited Riddell from disclosing "all proprietary or confidential information . . . including without limitation: the identity of, and other information regarding, . . . contract terms; financial information; and other information acquired or created by [Riddell] in the course of, or otherwise in connection with, [his] employment with [SSI]" for up to two years following his employment with SSI (Court File No. 126 at 3).[1]  Curtis Bowe, as an attorney licensed to practice law in the state of Tennessee, was limited by Tennessee Rules of Professional Conduct with regards to the information he could solicit or secure from Riddell as it relates to this case.  In its motion, SSI alleges Curtis Bowe violated Rules 4.2 and 4.4 of those rules.

Rule 4.2 of the Tennessee Rules of Professional Conduct states, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."  The comments to the Rule further explain, "[i]n communicating with a current or former agent or employee of an organization, a lawyer shall not solicit or assist in the breach of any duty of confidentiality owed by the agent to the organization."  TRPC 4.2, cmt. 7 (referencing TRPC 4.4).  Rule 4.4(b) directs "a lawyer who receives information relating to the representation of the lawyer's client that the lawyer knows or reasonable should know is protected by RPC 1.6 (including information by the attorney-client privilege or the work product) and has been disclosed to the lawyer inadvertently or by a person not authorized to disclose such information to the lawyer, shall: (1) immediately terminate review or use of the information; (2) notify . . . the person's lawyer if communication . . . is prohibited by RPC 4.2,

---

[1]In its reply brief (Court File No. 131), WHS does not contest or deny that Riddell was bound by the confidentiality provision as stated by SSI in the Employment Agreement.

of the inadvertent or unauthorized disclosure; and (3) abide by that person's or lawyer's instructions

. . ." TRPC 4.4(b).

###### A. Riddell Affidavit Contains Confidential Information

Here, it is clear Riddell disclosed certain information that was in violation of his

confidentiality agreement. While Attorney Curtis Bowe was not prohibited by the Tennessee Rules

of Professional Conduct from speaking with Riddell, *see e.g., Sherrod v. Furniture Ctr.*, 769 F.

Supp. 1021, 1022 (W.D. Tenn. 1991), Riddell did not have the authority to disclose certain

information to Curtis Bowe.

###### 1. Company's Financial Reserves

In paragraph 26, Riddell states during his time working at SSI, SSI's reserves were in excess

of $700,000 (Court File No. 119 at 6). It is not clear from the affidavit whether Riddell was

referring to SSI's aggregate financial reserves or the specific liability reserve held for the purpose

of covering WHS's claims for commission payments. Nonetheless, both of the parties seem to

interpret Riddell's statement as referring to SSI's financial reserve regarding this case (Court File

No. 131 at 11; Court File No. 134 at 4-5).

Thus, if the parties are correct, then the Court is persuaded such information is confidential

and perhaps privileged. "A reserve essentially reflects an assessment of the value of the claim[,]

taking into consideration the likelihood of an adverse judgment ." *Bondex Int'l., Inc. v. Hartford

Accident and Indem. Co.*, No. 1:03CV1322, 2006 WL 355289, at *2 (N.D. Ohio February 15, 2006).

If such information was prepared by SSI's legal counsel, then "[t]he individual case reserve figures

[might] reveal the mental impressions, thoughts, and conclusions of [the] attorney in evaluating the

legal claim." *Id.* Accordingly, it is clear Riddell at least violated his own confidentiality agreement

with SSI by disclosing this information. At worst, he disclosed information that was the result of attorney work-product or may have reflected attorney-client privilege communications.

### 2. Riddell's Communication With Teleflex's Legal Counsel

In paragraph 27, Riddell asserts he was told by legal counsel of Teleflex, SSI's parent company at the time, that SSI owed WHS a certain amount in commissions (Court File No. 119 at 6). This is information that would have presumably been subject to the attorney-client privilege. Therefore, Riddell should not have disclosed it.

### 3. SSI's Hospital Contracts and Revenues Earned

Finally, Riddell disclosed in paragraphs 26 and 31, according to a spreadsheet Riddell asked SSI's controller to compile, SSI owes WHS $1,215,529.85 in commissions from specifically-identified hospitals (Court File No. 119 at 6-7). Riddell's confidentiality agreement specifically prohibits him from disclosing financial information of SSI.

### B. Sanctions

### 1. Motion to Strike Affidavit

SSI moves this Court to strike the affidavit of Riddell in its entirety (Court File No. 125). The Court agrees some of the information disclosed by Riddell was in violation of his confidentiality agreement with SSI. Accordingly, the Court will strike from the record those portions of the affidavit, particularly, paragraphs 26, 27, and 31 and the attached exhibit listing specific hospitals and purported commissions owed, which contain proprietary and confidential information. While the Court declines to exclude Riddell from offering any testimony at trial, the parties may make appropriate objections to particular testimony pursuant to the Federal Rules of Evidence.

### 2. Motion to Disqualify Curtis Bowe

SSI also moves this Court to disqualify Curtis Bowe as WHS's counsel (Court File No. 125). "The Court has inherent authority to supervise the professional conduct of attorneys appearing before it. Therefore, the Court has inherent authority to disqualify an attorney." *Eon Streams, Inc. v. Clear Channel Communications, Inc.*, No. 3:05-CV-578, 2007 WL 954181, at *3 (E.D. Tenn. March 27, 2007) (internal citations omitted).

Here, it is clear Attorney Curtis Bowe was not prohibited from the Tennessee Rules of Professional Conduct from engaging in *ex parte* communications with Riddell, a former employee of SSI. There is nothing in the record that has been brought to the Court's attention that Mr. Bowe was aware of the contents of the confidentiality agreement Riddell had with SSI.

Nonetheless, there are three factors this Court should consider in determining whether Bowe should be disqualified due to a violation of Rule 4.2 of the Tennessee Rules of Professional Conduct. In particular, the Court should consider "(1) [WHS's] interest in being represented by counsel of its own choice; (2) [SSI's] interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration of justice." *Kitchen v. Aristech Chem.*, 769 F.Supp. 254, 258 (S.D. Ohio 1991) (quoting *Meat Price Investigators Ass'n v. Spencer Foods*, 572 F.2d 163, 165 (8th Cir. 1978) (considering whether disqualification was appropriate for a violation of the Ohio Code of Professional Responsibility); *see also General Mill Supply Co. v. SCA Serv., Inc.*, 697 F.2d 704, 711 (6th Cir. 1982).

Disqualification of counsel is a drastic remedy and should only be used in the most egregious cases. From the evidence, it is clear Bowe did not act in bad faith. Disqualification would not contribute to the public's interest in the scrupulous administration of justice. And obviously WHS has a strong interest in continued representation of Attorney Bowe. Finally, the Court concludes SSI

has failed to establish that its interest in a trial free from prejudice outweighs WHS's interest in being represented by Attorney Curtis Bowe. The Court is confident the "normal protections under the Federal Rules of Civil Procedure and the Federal Rules of Evidence will [] suffice to prevent [any privileged or confidential] information from being proffered or admitted at trial." *Kitchen*, 769 F. Supp. at 259. Accordingly, the Court finds disqualification is not an appropriate remedy in this case.

## III.    MOTION FOR SUMMARY JUDGMENT

SSI also moves this Court for a grant of summary judgment in favor of SSI on all claims asserted in WHS's complaint (Court File No. 102). For the reasons stated below, the Court will **GRANT IN PART** and **DENY IN PART** SSI's motion for summary judgment.

### A.    Standard of Review

The grant of summary judgment in favor of one party is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). Therefore, the Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, however, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate [] there is a genuine issue

for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2, 3 (E.D. Tenn. November 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**B.**    **Discussion**

**1.**    **Breach of Contract**

In Count One of its amended complaint (Court File No. 114), WHS alleges SSI breached the Letter Agreement by failing to pay commissions owed to WHS and by negotiating contracts such as the Consorta Agreement. To assert a claim for breach of contract, WHS must prove (1) there was an enforceable contract; (2) SSI's nonperformance under the contract amounted to a breach of the contract; and (3) WHS was damaged by the breach. *Clinch Valley Printing Co. v. Int'l Hot Rod Ass'n*, 4 Fed. App'x 303, 304 (6th Cir. 2001). SSI does not dispute that it owes $382,370**.**00 in funds for commissions owed under the Letter Agreement from February 17, 2004 until December

31, 2009 (Court File No. 103).  SSI also concedes it owes $46,537.25 for commissions owed under the Letter Agreement from January 1, 2010 until the present (*id.*).  Indeed, SSI states "the proper amount of commissions that SSI owes under the Letter Agreement stems from the cash collections SSI received from CHI  pursuant to its contract with CHI and cash collections SSI received from the other hospital accounts listed in Exhibit A to the Letter Agreement, provided those hospitals entered into a contract with SSI by September 30, 2002" (Court File No. 123 at 7).

However, WHS contends SSI owes it as much as $1,700,000.00 (Court File No. 114). Specifically, WHS seems to allege it is entitled to (1) unpaid commissions earned prior to February 17, 2004, (2) unpaid commissions resulting from a group purchasing agreement between SSI and Consorta, Inc., and (3) unpaid commissions resulting from contracts between SSI and other hospitals, known and unknown (Court File No. 116; Court File No. 120 ("Reeder Deposition") at 12).

Nonetheless, SSI argues WHS is barred by the applicable statute of limitations from asserting claims to unpaid commissions prior to February 17, 2004 (Court File No. 103).  In addition, SSI urges the contract entered between SSI and Consorta was not subject to the Letter Agreement between SSI and WHS; therefore, WHS is not entitled to commissions on endoscopic procedures performed at hospitals affiliated with Consorta, Inc. (*id.*).  Finally, SSI seems to argue the commission program outlined in the Letter Agreement only extended to those accounts executed by September 30, 2002, and there is no dispute as to how much is owed in regards to these accounts. Because the Court finds there is a genuine dispute regarding when the breach of contract cause of action accrued and whether SSI breached the Letter Agreement by failing to include WHS in negotiating contracts with Consorta, Inc. and other known or unknown hospitals, the Court will

**DENY** summary judgment in favor of SSI as to WHS's breach of contract claim.

### a.    Statute of Limitations

In regards to SSI's argument WHS is time-barred from asserting claims to commissions earned prior to February 17, 2004, the Court finds there is a genuine issue of material fact as to when WHS's breach-of-contract cause of action accrued. *See Swanson v. Wilson*, No. 10-5064, 2011 WL 1900389, at *5 (6th Cir. May 20, 2011) (explaining "the burden is on a defendant to show that the statute of limitations has run . . . However, once the defendant carries that burden, the plaintiff has the burden to establish an exception to the statute, such as tolling or late discovery of the injury"). WHS's breach of contract claim is subject to a six year statute of limitations. Tenn. Code Ann. § 28-3-109. Furthermore, under Tennessee law, "the statute of limitations for breach of contract commences to run as of the date of the breach or when one party announces its intention not to perform." *Lohmann v. Allmerica Fin. Life Ins. & Annuity Co.*, No. 3:05-CV-199, 2007 WL 2220416, at * 4 (E.D. Tenn. July 30, 2007). Here, SSI argues its "action of not paying the commissions when they became due was sufficient to begin running the statute of limitations for any breach of contract action specifically involving those commissions" (Court File No. 103 at 10).

In response, WHS contends SSI's breach of performance at the time it received the Direct Pay letter from PEI in August 2003 only constituted an "anticipatory breach" of the Letter Agreement (Court File No. 116 at 10). An anticipatory breach "occurs before the time that a contract requires a party to perform." *UT Med. Group, Inc. v. Vogt*, 235 S.W. 3d 110, 120 (Tenn. 2007). When a party commits an anticipatory breach, the non-breaching party may "(1) rescind the contract and pursue remedies based on a rescission; (2) treat the repudiation as an immediate breach by bringing suit or changing position in some way; or (3) await the time for performance of the

13

contract and bring suit after that time has arrived." *Id.* In addition, WHS asserts it chose the third

option because it "had no reason to know [] SSI would not perform its obligation under the [Letter]

Agreement to pay commissions on the CHI contract . . . until December 31, 2004, when . . . the

contract with CHI 'terminated'" (Court File No. 116 at 13). In other words, WHS argues SSI did

not breach the contract until December 31, 2004.

Based on the record, the Court finds there is a genuine dispute as to when the statute of

limitations began to run. In particular, because SSI acknowledges it did not pay WHS its

commissions because of PEI's secured interest claim, and SSI claims it would have paid the

commissions once WHS resolved its dispute with PEI (Court File No. 103), the evidence is not clear

there was in fact an actual breach in 2003. In deciding SSI's motion, the Court must view the

evidence in the light most favorable to WHS, must give WHS the benefit of all credibility choices,

and must draw all inferences in favor of WHS. WHS denies there was a breach in 2003.

Accordingly, the Court will **DENY** summary judgment on this ground.

### b.    Consorta Agreement and Contracts with Other Hospitals

The Court also finds there is a genuine dispute as to how SSI breached the Letter Agreement.

WHS argues SSI also breached its contract with WHS "by negotiating what SSI terms 'a new

contract' to provide endo[scopic] services at CHI hospitals [through the Consorta Agreement]"

(Court File No. 116 at 6). This is because, according to WHS, CHI is an owner of Consorta, Inc.

(*id.* at 8) (referencing Reeder Deposition, Court File No. 120 at 14 (pg 139)).[2] Specifically, WHS

---

[2] Although both SSI and WHS relied on the deposition of Reeder, SSI asserts in its reply
memorandum Reeder's deposition is inadmissible because Reeder's testimony regarded parole
evidence and information to which Reeder has no personal knowledge (Court File No. 123). First,
according to SSI, the Letter Agreement clearly states the commission program would only extend
to those accounts listed in Exhibit A provided such contracts were executed by September 30, 2002

argues the "January 1, 2005 contract between SSI and Consorta is an extension of the contract between SSI and CHI because it requires the delivery of the same range of endoscopic services, to the same hospitals for which WHS earns commissions" (*id.*).

In contrast, SSI asserts its contract with CHI terminated on December 31, 2004 (Court File No. 103). Furthermore, SSI contends the agreement entered into with Consorta, Inc., was a distinct and separate agreement, rather than an extension of the CHI Agreement that was in effect (*id.*). To support its claim, SSI refers to a portion of the deposition of Sylvester Reeder ("Reeder"), the principal of WHS, who conceded Consorta, Inc., and CHI are two different companies, and Consorta existed at the time the CHI Agreement was entered in to (*id.* at 12). SSI also presents the affidavit of William Bynum, Vice President of Sales at SSI who states "the CHI Agreement and the Consorta Agreement are two separate and distinct agreements" (Court File No. 105 at 3).

Based on the memoranda filed by SSI and WHS, and the affidavit of William Bynum and the deposition of Sylvester Reeder, the Court finds there is a genuine issue of material fact as to whether SSI breached the Letter Agreement by excluding WHS from negotiating the Consorta Agreement or any other contract. In addition, according to the affidavit of Curtis Bowe, "WHS is defunct and maintains no records associated with the Letter Agreement entered into between WHS and SSI other than those produced during the discovery period in this matter" (Court File No. 121). As a result, WHS also requests this Court deny SSI's motion for summary judgment pursuant to Fed.

---

(*id.*). While the Court agrees this language is unambiguous, the parole evidence rule does not preclude WHS from introducing evidence that the Consorta Agreement was a mere extension of the CHI Agreement. Second, SSI contends Reeder lacks personal knowledge regarding the negotiations which took place pursuant to the Consorta Agreement. While the Court finds this argument persuasive, there is no indication Reeder, with his many years of experience in the healthcare industry, would not have personal knowledge regarding whether Consorta had ownership rights with CHI. Nonetheless, the Court will properly exclude from consideration those parts of Reeder's deposition to which he lacks personal knowledge.

R. Civ. P. 56(d).

## 2. Remaining Claims

With respect to WHS's remaining claims, SSI argues "WHS cannot recover, as a matter of law, under any other cause of action it asserts in its Amended Complaint" (Court File No. 103 at 13). Specifically, SSI asserts these claims are either time-barred by the applicable statutes of limitations or are moot (*id.*).

In response to SSI raising a statute of limitations defense, WHS does not argue the statute of limitations does not apply. Rather, WHS argues SSI is equitably estopped from asserting such defense (Court File No. 116). The Court, however, finds such argument to be without merit. The doctrine of equitable estoppel applies where "the opposing party has engaged in misconduct." *Norton v. Everhart*, 895 S.W.2d 317, 321 (Tenn. 1995). Specifically, the party must have engaged in:

> (1) conduct which amounts to a false representation or concealment of material facts, or at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive of the real facts.

*B&B Enter. of Wilson County, LLC v. City of Lebanon*, 318 S.W.3d 839, 849 (Tenn. 2010). In addition, "equitable estoppel cases are different from fraudulent concealment and other discovery rule cases." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001) *Id.* It only "tolls the running of the statute of limitations where a defendant has 'misled the plaintiff into failing to file his action within the statutory period of limitations.'" *Massi v. Lomonaco*, No. 3:10-CV-258, 2011 WL 1258054, at *3 (E.D. Tenn. March 31, 2011) (quoting *Farhner*, 48 S.W.3d at 145). In other words, in an equitable estoppel case, "the plaintiff has already discovered his injury - or should have

discovered it - and consequently, the limitations period has begun and ultimately expired." *Farhner*, 48 S.W.3d at 146. Accordingly, WHS must show SSI misrepresented or concealed facts which caused WHS to untimely file its lawsuit after WHS had discovered its injuries. *Id.* Here, although WHS alleges it "opted to wait for an actual breach" on the part of SSI before it filed a lawsuit, it is clear from the deposition testimony of Sylvester Reeder, III, the former owner or principal of WHS, WHS did not bring suit against SSI sooner than it did because it could not afford to do so (Court File No. 120 ("Reeder Deposition") at 104:1-15).

Nonetheless, some of the arguments presented by WHS in regards to the doctrine of equitable estoppel are more properly asserted as arguments regarding when the statute of limitations began to run. Under the discovery rule, "a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should have known that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). In its response in opposition to SSI's motion for summary judgment, WHS seems to argue SSI concealed facts which prevented WHS from discovering some of the injuries asserted in its amended complaint. Therefore, there may be a genuine issue as to when WHS's claims accrued.

### a. Procurement of Breach of Contract (T.C.A. § 47-50-109)

In Count Two of the amended complaint, WHS argues SSI violated Tennessee Code Annotated § 47-50-109 which provides, "[i]t is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract . . ." According to SSI, it is entitled to summary judgment on this claim because WHS is time-barred from asserting this claim (Court File No. 103). "Section 47-50-109

17

creates a statutory treble damage remedy for wrongful inducements to breach a contract and contains no express limitations period." *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 204 (6th Cir. 1986). However, Tennessee courts have found this statute "represent[s] the codification of the common-law tort action for inducement to breach contract." *Stratienko v. Chattanooga-Hamilton County Hosp. Auth.,* No. 1:07-CV-258, 2009 WL 736007, at *11 (E.D. Tenn. March 17, 2009). Because WHS's claim is more of a common law tort claim, the three year statute of limitations of Tennessee Code Annotated § 28-3-105 is applicable, making WHS's claim time barred. *See id.*

Here, it is clear from the record, this cause of action accrued on or before the time SSI breached its contract with WHS. Nevertheless, because WHS is accusing SSI of inducing its own breach of contract, SSI cannot be held liable under this claim. *See e.g., Int'l Union v. Auto Glass Emp. Fed. Credit Union*, 858 F. Supp. 711, 724-25 (M.D. Tenn. 1994). Accordingly, the Court will **GRANT** summary judgment as to this claim and **DISMISS** Count Two of the amended complaint (Court File No. 114).

### b.    Intentional Interference with a Business Relationship

In Count Three of the amended complaint, WHS argues SSI intentionally interfered with the business relationships established between WHS and the hospitals which were the subject of the Letter Agreement (*id.*). In response, SSI also argues it is entitled to summary judgment as to this Count on the basis WHS is time-barred from asserting this claim. Under Tennessee law, "the three-year limitation period of Tenn. Code Ann. § 28-3-105 applies to common law actions for . . . unlawful interference with a business." *Carruthers Ready-Mix, Inc. v. Cement Masons Local Union No. 520*, 779 F.2d 320, 324 (6th Cir. 1985).

According to SSI, "the only 'interference' WHS [specifically] alleges involves SSI's

negotiation of the Consorta Agreement prior to its effective date as of January 1, 2005" and SSI's failure to include WHS in such negotiations (Court File No. 103 at 15). Indeed, although WHS seems to allege there may have been other hospitals to which it made referrals on behalf of SSI, WHS has failed to present any admissible evidence to demonstrate such fact. Still, because WHS contends it "had no means to know of the true fact [] SSI was []negotiating the contract terms" with Consorta (or CHI, as alleged by WHS), and because neither party indicates when WHS found out about the Consorta Agreement, the Court finds there is a genuine issue of material fact as to when the statute of limitations began to run as to this claim. Accordingly, the Court will **DENY** SSI's motion for summary judgment as to Count Three of the amended complaint.

### c.    Malice, Fraud, and Deceit

Count Four of WHS's amended complaint asserts a claim for malice, fraud, and deceit on the part of SSI (Court File No. 114). Specifically, WHS asserts SSI "intentionally refused to pay WHS the commissions owed. SSI then went to the hospitals and extended or renewed the agreements with the hospitals . . . [and] SSI took this action after it decided that WHS was no longer necessary to the relationships SSI sought to form with the hospitals" (*id.* at 8-9). Courts have found the three year statute of limitations, pursuant to Tennessee Code Annotated § 28-3-105, applies in cases such as this one because the "gravaman of [WHS's] complaint if for fraud and deceit." *See Harrison v. Timminco Tech. Corp.*, 45 F.3d 430 (Table), No. 94-5649, 1994 WL 714357, at *1 (6th Cir. December 22, 1994).

Here, Reeder seems to imply SSI ceased paying WHS commissions owed because it saw WHS as a competitor and wanted to run WHS out of business (Court File No. 120 ("Reeder Deposition" at 104:1-13). Indeed, WHS went out of business in 2004 (*id.* at 125:18-20). Thus, it

is clear WHS should have reasonably discovered the injury resulting from this claim around the time it went out of business. The Court will therefore **GRANT** SSI's motion for summary judgment as to this claim, and Count Four of the amended complaint will be **DISMISSED**.

### d. Conversion

In Count Five, WHS asserts "SSI has converted money belonging to WHS for its own use and benefit[,] [and] SSI's property interest, if any, in and to said money is subordinate to that of WHS" (Court File No. 114 at 9). "Under Tennessee law, the statute of limitations for conversion actions is three years." *Temple v. AmSouth Bank*, 40 F. App'x 943, 946 (6th Cir. 2002) (citing Tenn. Code. Ann. § 28-3-105).

"Conversion does not occur until the 'alleged wrongdoer exercises dominion over the funds in defiance of the owner's rights.'" *Estate of Ralston ex. rel Ralston v. Hobbs*, No. M2009-02442-COA-R3-CV, 2010 WL 4272692, at * 4 (Tenn. Ct. App. Oct. 28, 2010). In this case, WHS was aware SSI was not paying it commission owed by 2004 when WHS closed its doors, and SSI reportedly ceased its communication with WHS. Based on the record, the Court finds this cause of action would have accrued more than three years ago. Accordingly, the Court will **GRANT** SSI's motion for summary judgment as to this claim, and Count Five of the amended complaint will be **DISMISSED**.

### e. Tennessee Consumer Protection Act Violation

In Count Six of the amended complaint, WHS asserts a claim against SSI for violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*. In response, SSI also argues this claim is time-barred.

The purpose of the Act is "to protect consumers and legitimate business enterprises from

those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part of wholly within [the state of Tennessee]." Tenn. Code Ann. § 47-18-102(2). A private action may be brought by "any person who suffers an ascertainable loss of money or property . . ., as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this [Act]." Tenn Code Ann. § 47-18-109.

Under Tenn. Code Ann. § 47-18-110, any action brought pursuant to § 47-18-109 must be "brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action . . . be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief." Here, WHS alleges in its amended complaint SSI engaged in deceptive practices by "accept[ing] WHS's work in recruiting and signing hospitals, but repeatedly fail[ing] or refus[ing] to pay WHS commissions pursuant to the [Letter Agreement]" (Court File No. 114 at 10). Although not stated in its complaint, WHS also seems to assert SSI engaged in deceptive practices when it negotiated an agreement with Consorta, Inc. and did not include WHS as a part of the negotiations. Therefore, based on the evidence presented in the record, the January 1, 2005 would be the last "consumer transaction" giving rise to WHS's claim for relief. Because WHS did not file its complaint until February 2010, this claim is also time-barred. The Court will **GRANT** SSI's motion for summary judgment as to this claim, and Count Six of the amended complaint will be **DISMISSED**.

### f.    Unjust Enrichment

In Count Seven of the amended complaint, WHS argues "SSI directly realized financial gain from the efforts of WHS [when WHS recruited hospitals to use equipment made by SSI in their endoscopic procedures]. SSI never paid the commissions owed to WHS" (Court File No. 114 at 11).

In response, SSI claims this cause of action fails as moot because there was an existing contract between SSI and WHS.

In order to recover under a theory of unjust enrichment as WHS asserts, (1) "there must be no existing, enforceable contract between the parties covering the same subject matter"; (2) "the party seeking recovery must prove that it provided valuable goods and services"; (3) "the party to be charged must have received the goods and services"; (4) "the circumstances must indicate that the parties involved in the transaction should have reasonable understood that the person providing the goods or services expected to be compensated"; and (5) "the circumstances must demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them." *Doe v. Univ. of South*, No. 4:09-CV-62, 1011 WL 1258104, at *20 (E.D. Tenn. March 31, 2011). In its response, WHS does not deny there was an existing, enforceable contract between it and SSI. Accordingly, the Court will **GRANT** SSI's motion for summary judgment as to this claim, and Count Seven of the amended complaint will be **DISMISSED**.

### g.      Promissory Estoppel

In Count Eight, WHS asserts a claim for promissory estoppel (Court File No. 114). The grounds for this cause of action is that SSI "promise[d] . . . to renew or extend the agreements it had with hospitals[;] . . . [b]ased on SSI's representations about payment and the reasons for its repeated and continued failure to make payment pursuant to the terms of the [Letter Agreement], WHS expected payment, sought payment, and was rejected at every turn" (*id.* at 11-12). SSI also argues this claim is moot.

"Promissory estoppel is 'an equitable remedy based on a quasi contractual theory' only available 'in cases in which there is an absence of consideration between the parties so that there is

no valid contract.'" *Holt v. Macy's Retail Holdings, Inc.*, 719 F. Supp. 2d 903, 914 (W.D. Tenn. 2010) (quoting *Diana Asbury v. Lagonia Sherman, LLC*, No. W2001-01821-COA-R3-CV, 2002 WL 31306691, at *2 (Tenn. Ct. App. Oct. 15, 2002)). Because neither party disputes as to whether there was a valid contract, the Court will **GRANT** SSI summary judgment as to this claim; Count Eight will be **DISMISSED**.

### h. Bad Faith and Intentional Misrepresentation

In Counts Nine and Ten, WHS asserts claims for common law bad faith and intentional misrepresentation. Both of these claims have the same factual basis as WHS's claim for malice, fraud, and deceit. Accordingly, the Court finds these claims are barred by the statute of limitations. The Court will **GRANT** SSI's motion for summary judgment as to this claim, and Counts Nine and Ten of the amended complaint will be **DISMISSED**.

### I. Declaratory Judgment

In Count Eleven, WHS moves this Court to declare WHS "is not in violation of any express or implied contract with SSI" (Court File No. 114). In response, SSI states "[it] does not contend (and has never contended) that WHS is in violation of the [Letter] Agreement" (Court File No. 103). Therefore, there is no legal basis to award WHS a declaratory judgment. The Court agrees, and Count Eleven will be **DISMISSED**.

### j. Discrimination Claim

Finally, in Count Thirteen of the amended complaint, WHS contends SSI, "as a program or recipient of federal funds, discriminated against WHS on the basis of [] race, color, and/or ethnicity in violation of 42 U.S.C. § 2000d et seq." (Court File No. 114). The Court previously denied SSI an opportunity to late-file a motion for summary judgment as to this claim (Court File No. 137).

However, based on the evidence presented in the record, the Court finds a grant of summary judgment is not appropriate at this time.

IV.    **MOTION FOR JUDGMENT ON THE PLEADINGS**

Finally, before the Court are WHS's motion for judgment on the pleadings (Court File No. 72) and motions to disburse funds (Court File Nos. 109, 128).  The Court will **DENY IN PART as MOOT** and **RESERVE RULING IN PART** on WHS's motion for judgment on the pleadings and **GRANT IN PART** WHS and PEI's motions to disburse funds.

A.    **Standard of Review**

Under Fed. R. Civ. P. 12(c), "a party may move for judgment on the pleadings." When considering a Rule 12(c) motion, this Court applies the same standard of review as a 12(b)(6) motion and construes the complaint in a "light most favorable to plaintiff." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC* , 477 F. 3d 383, 389 (6th Cir. 2007); *Albrecht v. Treon* , No. 09-3703, 2010 WL 3306877, at *2 (6th Cir. Aug. 24, 2010). In other words, "to survive [such] motion, 'factual allegations contained in a complaint must raise a right to relief above the speculative level.'" *Zibbell v. Mich. Dept. of Human Serv.* , 313 F. App'x 843, 846 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n* , 528 F.3d 426, 430 (6th Cir. 2008) ). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," the statement must contain "factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1940 (2009) (citing Fed. R. Civ. P. 8(a)(2)).   Bare assertions of legal conclusions are insufficient, and the pleading must at least contain "inferential allegations" regarding the material elements of the claim.

24

*Scheid v. Fanny Farmer Candy Shops, Inc.* , 859 F.2d 434, 436 (6th Cir. 1988).

### B.     Discussion

On November 24, 2010, WHS filed a motion for judgment on the pleadings (Court File No. 72) with respect to SSI's third party complaint for interpleader.  In the motion, WHS moves this Court to enter judgment in favor of WHS and PEI, ordering judgment in the amount of $382,270.00 and prejudment interest on that amount at ten percent (10%) per annum (*id.*).  WHS also requests this Court grant WHS attorney's fees "associated with the preparation, filing, and if necessary, participation in hearing on [the motion]" (*id.* at 7).  In its response, SSI argues the Court should deny WHS's motion because there is a factual dispute regarding SSI's payment obligations (Court File No. 75).  SSI concedes it owes at least $382,370.00, but it is not clear to SSI whether WHS or PEI is entitled to receive the funds.  SSI also argues WHS is not entitled to an award of prejudment interest, or in the alternative, the Court should reserve the issue and not decide it on the motion for judgment on the pleadings (*id.*).  Finally, SSI asserts it is entitled to reasonable attorney's fees (*id.*).

On January 27, 2011, SSI filed a motion moving this Court for permission to deposit $382,370.00 into the Court's registry (Court File No. 83).  On February 15, 2011, that motion was granted (Court File No. 99).  As a result, WHS and PEI filed a motion for disbursement on March 1, 2011 asking this Court to disburse the funds deposited by SSI, with $280,000.00 to be paid to PEI and $102,370.00 to be paid to WHS, plus accrued interest, minus any statutory fees (Court File No. 109).  However, at the time, SSI had not yet deposited the funds (Court File No. 113).  Nonetheless, to the extent PEI was willing to relieve SSI "of any obligations with respect to the Direct Pay Letter, SSI [was] amenable to disbursing the funds" as long as SSI was awarded attorney's fees in the amount of $14,980.00 (*id.* at 2).

Then on April 1, 2011, WHS and PEI filed a second motion to disburse the funds (Court File No. 128). However, this time, the parties requested the Court distribute $87,390.00 to WHS instead of $102,370.00 (*id.*). The parties asked the Court to reserve the remaining $14,980.00 until the Court addressed the merits of WHS's motion for judgment on the pleadings (*id.*). In response, SSI now argues its attorney's fees and expenses have increased to approximately $20,000.00. SSI also filed a proposed order of disbursal seeking to be relieved from any further obligation, if any under the Direct Pay Letter (Court File No. 129). WHS and PEI argue it is not proper for this Court to enter the proposed order (Court File No. 135).

Because SSI already deposited $382,270.00 in the Court's registry, which it concedes it owes WHS, the Court will **DENY IN PART as MOOT** WHS's motion for judgment on the pleadings with respect to that amount (Court File No. 72). Nonetheless, the Court will **GRANT IN PART** WHS and PEI's motion to disburse those funds (Court File Nos. 108, 129), and will **ORDER** as follows:

1.  The Clerk of the Court is authorized and directed to issue one check in the principal amount of $270,000.00 payable to "Pacesetter SBIC Fund, Inc. and Sherrard & Roe, PLC," Employer Identification Number (PEI) 56-1422256 and Employer Identification Number (Sherrard & Roe, PLC) 62-1103779. The check shall be mailed to or otherwise delivered to Pacesetter SBIC Fund, Inc. c/o Samuel Funk, Esq., Sherrard & Roe, PLC, 150 3rd Avenue South, Suite 1100, Nashville, Tennessee 37201 **within seven (7) days of this Court's accompanying Order.**

2.  The Clerk of the Court is authorized and directed to issue one check in the principal amount of $92,370.00 payable to "World Healthcare Systems, Inc. and Bowe and

Associates, PLLC," Employer Identification Number (WHS) 621323183 and Employer Identification Number (Bowe and Associates, PLLC) 263402493. The check shall be mailed to or otherwise delivered to World Healthcare Systems, Inc. c/o Curtis L. Bowe, III, Esq., Bowe and Associates, PLLC, 707 Georgia Avenue, Suite 302, Chattanooga, Tennessee 37402 **within seven (7) days of this Court's accompanying Order.**

Lastly, the Court will **RESERVE RULING** on whether WHS should receive pre-judgment interest (Court File No. 72) and whether either party is entitled to attorney's fees and expenses (*id.*; Court File No. 75).

## V.     CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Surgical Services, Inc.'s motion to strike the affidavit of Todd Riddell and motion for sanctions (Court File No. 125). The Court will **GRANT IN PART** and **DENY IN PART** Surgical Services, Inc.'s motion for summary judgment (Court File No. 102). The Court will **DENY IN PART as MOOT** and **RESERVE RULING IN PART** World Healthcare System, Inc.'s motion for judgment on the pleadings (Court File No. 72) and **GRANT IN PART** its motions to disburse funds (Court File Nos. 109, 128).

An Order shall enter.

**/s/**_____

**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**