UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| WORLD HEALTHCARE SYSTEMS, INC. ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | No. 1:10-cv-00060 |
| v. ) | Chief Judge Curtis L. Collier |
| ) | |
| SSI SURGICAL SERVICES, INC. ) | |
| ) | |
| Defendant/Counter-Plaintiff/ ) | |
| Third-Party Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| PACESETTER SBIC FUND, INC., f/k/a ) | |
| POWER EQUITIES, INC., ) | |
| ) | |
| Third-Party Defendant ) | |

**MEMORANDUM & ORDER**

During the second day of trial in this matter, Plaintiff World Healthcare Systems, Inc. ("WHS") moved to introduce into evidence a spreadsheet (the "disputed spreadsheet") previously stricken from the record in this Court's previous order (Court File No. 158). Defendant SSI Surgical Services, Inc. ("SSI") objects to the introduction of this spreadsheet relying on this Court's previous order and privilege doctrines (Court File Nos. 173, 183). WHS, in turn, argues the spreadsheet does not contain privileged or confidential information and is not protected as attorney work-product (Court File No. 179). In the alternative, WHS argues the spreadsheet should be admitted pursuant to Federal Rule of Evidence 502 (*id.*). The Court instructed WHS and SSI to brief the issue, and they have done so (Court File Nos. 173, 179, 183). The Court now rules that the disputed spreadsheet may be properly admitted into evidence pursuant to Fed. R. Evid. 502.

I.   BACKGROUND

On July 14, 2011, during the course of trial, SSI called Pamela Bishop ("Bishop") to testify regarding the amount of commissions involved in this case. During SSI's direct examination, SSI introduced into evidence a spreadsheet ("Exhibit 10"), which, according to SSI, represents the amount of commissions it owes to WHS pursuant to the Letter Agreement. According to Bishop, she created Exhibit 10, at the direction of former SSI President, Todd Riddell ("Riddell"). Based on Bishop's testimony and the time frame in which Riddell worked at SSI, the Court finds Exhibit 10 was likely created in 2009.

On cross examination, counsel for WHS attempted to question Bishop regarding the disputed spreadsheet, which was also created by Bishop in 2009 or 2010. The disputed spreadsheet was the subject of this Court previous order, whereby the Court excluded it from the record (Court File No. 259). The parties now dispute whether the disputed spreadsheet may be admitted during trial.

II.   LAW-OF-THE-CASE DOCTRINE DOES NOT APPLY

SSI first argues the disputed spreadsheet should not be admitted into evidence because this Court has already ruled that the disputed spreadsheet is "privileged," and such ruling is now the law-of-the-case (Court File No. 173). The law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine "is directed to a court's common sense and is not an inexorable command." *United States v. Rayborn*, 495 F.3d 328, 337 (6th Cir. 2007) (internal citations an d quotations omitted). There are three exceptional circumstances under which a court

should reconsider a previously decided issue: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling party; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Id.* (quoting *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006).

Previously, this Court considered SSI's motion to strike the affidavit of Todd Riddell ("Riddell") from the record and to impose sanctions on WHS's counsel, Curtis Bowe (Court File No. 125). As a part of its motion, SSI asked this Court to exclude from the record the same disputed which WHS now seeks to admit into evidence. This spreadsheet was compiled by Bishop, SSI's controller, and it details information about commissions earned from specifically identified hospitals (*id.*). In the Court's accompanying memorandum, the Court held the spreadsheet contained "proprietary and confidential information," and its disclosure was a "violation of [Riddell's] confidentiality agreement" (Court File No. 158 at 8). The Court also found any conversations between Riddell and SSI's (or Teleflex's) legal counsel regarding the commissions listed in the spreadsheet "would have presumably been subject to the attorney-client privilege" (*id.*).

SSI now argues, pursuant to that prior holding, WHS is barred by the law-of-the-case doctrine from introducing the disputed spreadsheet into evidence. Unfortunately, SSI overstates this Court's ruling in its trial brief. While the Court did state Riddell "disclosed information that was the result of attorney work-product or may have reflected attorney-client privilege communications" (Court File No. 158 at 8), the Court did not make a specific finding that the disputed spreadsheet itself is privileged. Rather, the Court made findings relating to Riddell's conversations with legal counsel about the information contained in the disputed spreadsheet and findings regarding Riddell's confidentiality agreement. Specifically, the Court found the disputed spreadsheet should not have been disclosed through the testimony or affidavit of Riddell who is bound by a confidentiality

3

agreement.

Accordingly, the Court finds the law-of-the-case doctrine does not apply in this instance. SSI fails to identify how admitting the disputed spreadsheet through the testimony of Bishop, SSI's controller, undermines the Court's previous decision.

## III. DISPUTED SPREADSHEET IS PRIVILEGED

SSI next argues, notwithstanding the Court's prior ruling, the disputed spreadsheet is privileged (Court File No. 173).[1] The Court agrees the disputed spreadsheet is work product and is therefore privileged.

### A. Work Product Doctrine

The work product doctrine, as codified in part by Fed. R. Civ. P. 26(b)(3), "protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative." *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). In order for a court to determine whether a document has been prepared "in anticipation of litigation," the Court should ask: "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. co.*, 578 F.3d 432, 439 (6th Cir. 2009). The party claiming the protection bears the burden of showing "that the anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Id.*

---

[1] In its response, WHS argues the information contained in the disputed spreadsheet is not confidential under Tennessee law. However, this Court has already ruled disclosure of the disputed spreadsheet by Riddell may have been a violation of Riddell's confidentiality agreement.

4

Here, SSI relies on the affidavit of Lisa Thompson ("Thompson"), Assistant General Counsel for Teleflex, Inc., SSI's former parent company (Court File No. 127). In her affidavit, Thompson explains "in [her] capacity as assistant general counsel . . . [she] was involved in the creation of [the disputed] spreadsheet. The [disputed] spreadsheet was prepared as a direct result of the ongoing dispute with WHS in anticipation of litigation" (Court File No. 127 at 3). The Court finds this affidavit is sufficient for SSI to meets its burden that the disputed spreadsheet was prepared "because of" the prospect of litigation. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381-82 (6th Cir. 2009); *see also Roxworthy*, 457 F.3d at 596 ("Where an undisputed affidavit . . . specific and detailed to indicate that the documents were prepared in anticipation of litigation or trial, then the party claiming work product protection has met its burden") (internal citations and quotations omitted).

### B.  Attorney-Client Privilege

"The attorney-client privilege protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client." *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005). There privilege is defined as follows: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at [the client's] instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). As this Court previously stated, to the extent SSI's employees sought legal advice regarding the content of the disputed spreadsheet or engaged in conversations with counsel about information contained therein, such conversations are privileged unless the privilege was waived.

5

## IV. SUBJECT MATTER WAIVER APPLIES

Although this Court finds the disputed spreadsheet is privileged, WHS argues the Federal Rules of Evidence and the Federal Rules of Civil Procedure allow it to overcome any privilege (Court File No. 179). In contrast, SSI contends no applicable exception applies (Court File No. 183).

### A. Federal Rule of Evidence 502

Rule 502 of the Federal Rules of Evidence provides in pertinent part:

> When [a] disclosure is made in a Federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.

#### 1. Exhibit 10 is Privileged

SSI argues Fed. R. Evid. 502 does not apply because Exhibit 10 is not a privileged document. Indeed Rule 502 is only triggered if SSI waived the attorney-client privilege or work-product doctrine when it introduced into evidence Exhibit 10.

"The [work-product] doctrine's rationale, as originally articulated, was to permit an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests." *Roxworthy*, 457 F.3d at 593 (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). However, as evolved, the work-product doctrine now not only protects documents prepared by an attorney, but it also protects documents prepared for an attorney in anticipation of litigation. *Id.*

Here, according to testimony, Exhibit 10, like the disputed spreadsheet, was also prepared

6

by Bishop at the direction of Riddell in 2009 or 2010. SSI argues that unlike the disputed spreadsheet, however, Exhibit 10 was produced "for the purpose of determining how much in commissions SSI owed at the time pursuant to the Letter Agreement, and SSI subsequently used it as a basis for filing a motion to pay the amount it owed into the Court" (Court File No. 183 at 4). In contrast, the disputed spreadsheet was "prepared at the request of counsel after WHS made a demand for commissions based upon revenues generated at the CHI hospital" (*id.*).

Nonetheless, the Court finds from the evidence presented and from the parties' trial briefs, neither Exhibit 10 nor the disputed spreadsheet would have been prepared but for the prospect of litigation with WHS. In other words, even though Exhibit 10 was prepared by SSI's finance department so SSI could pay WHS or PEI through the Court, the "driving force" behind creating the document was the anticipation of litigation. *See re Professionals Direct Ins. Co.*, 578 F.3d at 439.

### 2. Disputed Spreadsheet and Exhibit 10 Contain Same Subject-Matter

Having determined Exhibit 10 is privileged, and it being clear SSI intentionally disclosed Exhibit 10, the next question is whether the two documents contain the same subject matter. The Court finds they do. By SSI's own admission, the disputed spreadsheet relates to "WHS's position that it was entitled to commission payments on all CHI hospitals from 2005 to the present" (Court File No. 183 at 6). In comparison, Exhibit 10 lists the amount of spreadsheets SSI believes in owes WHS in light of its interpretation of the Letter Agreement.

### 3. Disputed Spreadsheet should be Admitted in the Interest of Fairness

According to the Explanatory Note, Subdivision (a) of Fed. R. Evid. 502, Rule 502 serves in "those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." From the Court's view, presentation of both documents allows the

7

jury to better understand both sides of the argument. "Litigants[,] [like SSI,] cannot hide behind the privilege if they are relying upon privileged communications to make their case . . . [P]rivilege cannot at once be used as a shield and a sword." *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (internal citations omitted).

**V.     CONCLUSION**

For the above-stated reasons, WHS may admit the disputed spreadsheet into evidence pursuant to Fed. R. Evid. 502. However, this ruling does not serve as a limitation on the parties' ability to object to the scope of the testimony regarding the disputed spreadsheet.

**SO ORDERED.**

**ENTER:**

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**